COPY

RECEIVED
05 JUL 25 PM 7:31
U.S. DISTRICT COURT

RECEIVED
JUL 26 2005
U.S.D.C. S.  N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

05 CV 6683

---

LAKESHORE INTERIORS,
on behalf of itself and all others similarly situated,

   Plaintiff,

v.

VISA U.S.A., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, and MASTERCARD INTERNATIONAL,

   Defendants.

Civil Action No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff, individually and on behalf of a class of all those similarly situated, brings this action for injunctive relief, costs of suit and treble damages under the antitrust laws of the United States, and alleges:

## NATURE OF THE CASE

1. Plaintiff alleges a conspiracy among Defendants and their co-conspirators to restrain trade in the general purpose credit card market by, *inter alia*, fixing, raising, maintaining or stabilizing "interchange fees" paid by Plaintiff and other members of the Class alleged in this Complaint for use of Visa and MasterCard credit cards in the United States, and to establish, promulgate and enforce ancillary rules and regulations designed to enforce and effectuate their unlawful combination and conspiracy.

2. This action is brought on behalf of all entities which paid interchange fees as part of a "merchant discount," both of which were artificially inflated as a result of Defendants' wrongful conduct as alleged in this Complaint. Plaintiff alleges that Defendants' wrongful

346030-1

conduct as alleged herein violates Section One of the Sherman Act, 15 U.S.C. § 1, and that Plaintiff and other members of the Class defined herein have suffered injury to their business and property as a result.

## JURISDICTION AND VENUE

3. This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees, from Defendants for damages sustained by Plaintiff for violations of Section 1 of the Sherman Act, 15 U.S.C. §1.

4. This Court has jurisdiction under 28 U.S.C. §§1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

5. Venue is proper in this District under Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§15, 22 and 26, and 28 U.S.C. §1391(b), (c) and (d), because during the relevant period one or more of the Defendants resided, transacted business, was found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described in this Complaint has been carried out, within this District.

## DEFINITIONS

6. "General Purpose Cards" include credit cards and charge cards. They are payment vehicles that enable consumers to make purchases from multiple unrelated merchants without immediately accessing or reserving funds.

7. "Credit Cards" are general purpose cards which give borrowers a revolving line of credit and let them borrow against it, carrying a balance with an agreed-upon interest rate.

8. A "Member Bank" is a bank which is a member of the Visa and/or MasterCard associations, and issues Visa and/or MasterCard general purpose cards to its customers, and/or acquires payment transactions from merchants.

9. A "Cardholder" is a person or business which has been issued a general purpose card.

10. "Credit Card Network" means a group of multiple banks which are interconnected by electronic or telecommunications means, to one or more computers, processors or switches for the purpose of providing credit card services to the Cardholder and retailer customers of the member banks.

11. "Acquiring Bank" means a member of Visa and/or MasterCard that acquires payment transactions from merchants and acts as a liaison between the merchant and the credit card network to assist in processing the payment transaction.

12. "Issuing Bank" means a member of Visa and/or MasterCard that issues Visa and/or MasterCard branded credit cards to consumers.

13. "Person" includes an individual, partnership, corporation, association of other business or legal entity.

14. "Class Period" means the period from January 1, 2004 to the present.

### PLAINTIFF

15. Plaintiff Lakeshore Interiors is a Minnesota corporation with its principal place of business in Orono, Minnesota. During the Class Period Plaintiff paid substantial merchant discount fees, including interchange fees, which were artificially fixed and inflated as a result of Defendants' conspiracy as alleged herein, and has been injured in its business or property as a result.

## DEFENDANTS

16. Visa U.S.A. is a Delaware membership corporation with its principal place of business in Foster City, California. Visa U.S.A. is organized as an open joint venture and is owned by its member banking institutions. Visa U.S.A. is a member of Visa International and is the only Visa International member operating in the United States. Visa U.S.A. licenses the Visa brand from Visa International and sublicenses the Visa brand to its issuing member banks.

17. Visa International Service Association is a Delaware membership corporation with its principal place of business in Foster City, California. Its members include both individual banks and "group members," such as Defendant Visa U.S.A. and Visa Canada. Visa International owns the "Visa" brand name and licenses that brand to its members, including to Defendant Visa U.S.A. Visa International is divided into six geographical regions, and each region is entitled to elect a minimum of two and maximum of eight representatives to Visa International's 26-member Board of Directors. Defendant Visa International has ultimate authority over Defendant Visa U.S.A.

18. Unless otherwise stated, the term "Visa" as used in this Complaint refers to both Visa U.S.A. and Visa International.

19. MasterCard Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

20. MasterCard International Inc. ("MasterCard") is a Delaware membership corporation with its principal place of business in Purchase, New York. It is the principal operating subsidiary of Defendant MasterCard Incorporated.

21. Unless otherwise stated, the term "MasterCard" as used in this Complaint refers to both MasterCard Incorporated and Mastercard International. The principal members of

MasterCard are banks and other domestic and foreign financial institutions some of whom, among other things, are licensed to issue MasterCard branded credit cards.

22. The acts charged in this Complaint to have been done by the Defendants were authorized, ordered and done by their respective officers, directors, employees, agents, members or representatives while actively engaged in the management, direction, control or transaction of the business or affairs.

23. Various other persons, firms or corporations not named as defendants in this Complaint have participated as co-conspirators with each of the Defendants in the illegal activities charged in this Complaint and have performed acts and made statements in furtherance of the illegal combination and conspiracy.

24. As a direct and proximate result of Defendants' unlawful and intentional concerted action, as alleged in this Complaint, Plaintiff and the members of the Class it seeks to represent have been injured in the businesses or property.

## TRADE AND INTERSTATE COMMERCE

25. The trade and interstate commerce relevant to this action is the provision of network services for credit cards.

26. During all or part of the Class Period, each of the Defendants, directly or through their affiliates or subsidiaries, sold network services for credit cards in a continuous and uninterrupted flow of interstate commerce to Plaintiff and members of the class located in all fifty states.

27. The activities of Defendants and their co-conspirators, as described herein, were within the flow of and had a substantial effect on interstate commerce.

## RELEVANT MARKET

28. The relevant market is the market for network services associated with general-purpose credit cards. The relevant geographic market is the United States. In this market, the sellers are the Defendant credit card networks and their member banks, and the buyers are primarily retail merchants. The interchange fee charged by Defendants and/or their member banks comprises a substantial portion of the price paid by such merchants to receive payment for a transaction associated with a credit card. Retail merchants as a whole pay billions of dollars every year to purchase network services in the relevant market.

29. A seller that was the only provider of network services associated with general purposed credit cards in the United States could raise interchange fees and merchant discount fees to levels substantially above the competitive level, without losing so much business as to make the fee increases unprofitable. Retail merchants cannot substitute payment methods (such as cash, checks, debit cards or charge cards) for general purpose credit cards because of the importance of such cards to their customers.

30. At all relevant times, Defendants Visa and MasterCard have had substantial market power in the relevant market, as demonstrated by: (1) their ability to raise interchange fees without losing business to other general purpose credit cards, or payment methods other than general purpose credit cards; (2) their ability to discriminate in price among different classes of retailers based, in part, on each class's ability to resist higher interchange fees; and (3) their ability to shift credit card usage from standard credit cards (with historically increasing interchange fees) to premium credit cards, with even higher interchange fees.

31. There are significant barriers to entry in the relevant market. No company has entered the market since 1985. Entry is estimated to cost over $1 billion, in large part due to the

"chicken-and-egg" problem of developing a network of retailers without an existing network of cardholders, who will not use cards that are not accepted by a large network of retailers.

## CLASS ACTION ALLEGATIONS

32.  Plaintiff brings this action on its own behalf and as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States (excluding Defendants and their present and former parents, predecessors, affiliates, and subsidiaries, and excluding governmental entities) who paid merchant discount fees including interchange fees to Visa and/or MasterCard member banks at any time between January 1, 2004 and the present.

33.  The Class is so numerous and geographically dispersed that joinder of all members is impractical. Plaintiff believes that there are, at a minimum, hundreds of thousands of class members who paid merchant discount fees, including interchange fees, during the Class Period. Their exact number and identities are presently unknown to Plaintiff but are known to the Defendants.

34.  There are questions or law and fact common to the Class, including but not limited to:

    a.  Whether Defendants and their co-conspirators combined or conspired to raise, fix, maintain, or stabilize interchange fees and merchant discount fees at artificially high levels, and otherwise restrain trade in the market for credit card network services;

    b.  Whether Defendants possess and exercise market power in the market described in this Complaint;

    c.  The duration and extent of Defendants' combination or conspiracy alleged in this Complaint;

346030-1

7

      d.    The methods used by Defendants and their co-conspirators to accomplish their combination or conspiracy;

      e.    Whether Defendants' conspiracy violated Section One of the Sherman Act;

      f.    The effect upon and the extent of injuries sustained by Plaintiff and other members of the Class, and the appropriate type and/or measure of damages; and

      g.    Whether Plaintiff and the other members of the Class are entitled to injunctive relief.

35.    Plaintiff is a member of the Class, its claims are typical of the claims of the other Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is represented by counsel who are competent and experienced in the prosecution of class action antitrust litigation. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

36.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

37.    Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

38.    The questions of law and fact common to the Class members predominate over any questions affecting only individual members.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records exist. Prosecution as a class action will eliminate the possibility of repetitious litigation, while

also providing redress for claims too small to support the expense of individual complex litigation.

## FACTUAL ALLEGATIONS

40. Visa and MasterCard operate the two largest credit card networks in the United States, through which they facilitate the exchange of funds and payment of fees between merchants, acquiring banks, issuing banks and consumers.

41. Visa and MasterCard are owned by the numerous banks that are the members of their networks. All of those banks, as a condition of membership in the networks, agree to abide by the policies and regulations of the respective networks, including the policies and regulations relevant to this Complaint.

42. The Visa and MasterCard associations have virtually identical member banks. Indeed, nearly every major bank in the United States is or was during the relevant period a member of both the Visa and MasterCard associations. Most of these common member banks have an ownership interest in both the Visa and MasterCard associations. Since 1975, virtually all significant card-issuing member banks have become owners of both Visa and MasterCard. Yet, despite this overlap in membership and ownership, neither Visa nor MasterCard enforces the safeguards necessary to prevent one association from obtaining confidential competitive information about the other.

43. As a result, Visa and MasterCard, through their member banks, jointly set uniform interchange fees for each of several classes of merchants, which are imposed on those merchants for credit card transactions. All such fees are fixed at the network level by the networks' pricing groups, the recommendations of which are summarily approved by the

346030-1

networks' respective board of directors. No two member banks negotiate interchange fees among themselves.

44. Acquiring banks charge merchants a merchant discount fee for every credit card transaction facilitated by the credit card networks. Interchange fees are a substantial component of the merchant discount fees, and effectively act as a floor for merchant discount fees, as any acquiring bank that charge a merchant discount fee less than the interchange fee for any particular transaction would suffer a loss on the transaction.

45. The imposition of fixed interchange fees is not reasonably necessary to Visa and MasterCard network operations.

## COUNT I

### *Per Se* Violation of 15 U.S.C. § 1

46. Beginning no later than January 1, 2004, Defendants and their co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in the provision of credit card network services in *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1.

47. Defendants' combination and conspiracy consisted of an agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to raise, fix, stabilize and maintain at artificially high levels the interchange fee and merchant discount fee which Defendants charged to merchants throughout the United States.

48. For the purpose of forming and effectuating their combination and conspiracy, Defendants and their co-conspirators did those things which they combined and conspired to do.

49. Defendants' combination and conspiracy had the following effects, among others:

a. Interchange fees and merchant discount fees charged by member banks were raised, fixed, stabilized or maintained at artificially high and non-competitive levels;

b. Merchants who purchased credit card network services from member banks, including Plaintiff and other members of the Class, were deprived of the benefits of free and open competition in the market for those services;

c. Price competition among Defendants in the provision of credit card network services to merchants who purchased those services was restrained, suppressed and eliminated.

50. Defendants' conduct was undertaken for the purpose of and with the effect of fixing prices and eliminating competition in *per se* violation of Section One of the Sherman Act.

51. As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff and the other members of the class were not able to purchase credit card network services at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for credit card network services than they would have paid in a free and open competitive market. The damages sustained by Plaintiff and the members of the Class are substantial, and their amount will be proven at trial.

52. Defendants' antitrust violation threatens continuing loss and injury to Plaintiff and the other members of the Class unless enjoined by the Court.

### COUNT II

### Unreasonable Restraint of Trade in Violation of 15 U.S.C. § 1

53. The collective establishment of interchange fees by Defendants and their member banks constitutes a combination or conspiracy in unreasonable restraint of trade. This

combination and conspiracy consisted of an agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to raise, fix, stabilize and maintain at artificially high levels the interchange fees and merchant discount fees which Defendants charged merchants throughout the United States.

54. Defendants' conspiracy has had substantially adverse effects on competition in the market for credit card network services, and has resulted in higher prices and lower output that would exist in the absence of that conspiracy. There are no procompetitive justifications for Defendants' restraints and, even if there were, there are far less restrictive means of achieving those alleged justifications.

55. For the purpose of forming and effectuating their combination and conspiracy, Defendants and their co-conspirators did those things which they combined and conspired to do.

56. Defendants' combination and conspiracy had the following effects, among others:

   a. Interchange fees and merchant discount fees charged by member banks were raised, fixed, stabilized or maintained at artificially high and non-competitive levels;

   b. Merchants who purchased credit card network services from member banks, including Plaintiff and other members of the Class, were deprived of the benefits of free and open competition in the market for those services;

   c. Price competition among Defendants in the provision of credit card network services to merchants who purchased those services was restrained, suppressed and eliminated.

57. Defendants' conduct was undertaken for the purpose of and with the effect of fixing prices and eliminating competition in *per se* violation of Section 1 of the Sherman Act.

58. As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff and the other members of the class were not able to purchase credit card network services at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for credit card network services than they would have paid in a free and open competitive market. The damages sustained by Plaintiff and the members of the Class are substantial, and their amount will be proven at trial.

59. Defendants' antitrust violation threatens continuing loss and injury to Plaintiff and the other members of the Class unless enjoined by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

A. That the Court determine that this action may be maintained as a class action and that Plaintiff is an adequate representative of the Class, and direct that reasonable notice of this action be given the members of the Class;

B. That Defendants' action alleged in this Complaint be adjudged and decreed to be in violation of Section One of the Sherman Act;

C. That Plaintiff and each other member of the Class recover damages, trebled as provided by law, determined to have been sustained by reasons of Defendants' antitrust violations;

D. That Defendants be enjoined from continuing the illegal course of conduct alleged in this Complaint;

E. That Plaintiff and the Class recover their costs of this suit, including reasonable attorneys' fees;

F.  That Plaintiff and the Class be granted such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff and the Class demand a trial by jury of all issues so triable.

DATED: July 25, 2005

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

*/s/ Daniel L. Berger*

Daniel L. Berger (DB-7748)
Gerald H. Silk (GS-4565)
Hannah E. Greenwald (HG-5180)
1285 Avenue of the Americas
New York, NY 10019
Tel:  (212) 554-1400
Fax:  (212) 554-1444

Respectfully submitted,

LOCKRIDGE GRINDAL NAUEN, P.L.L.P.

W. Joseph Bruckner MN #147758
Richard A. Lockridge MN #64117
Darla Jo Boggs MN #0314912
Suite 2200
100 Washington Avenue South
Minneapolis, MN 55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981

346030-1